ISHEE, J.,
 

 for the Court:
 

 ¶ 1. The Hinds County Circuit Court affirmed the decision of the Mississippi Workers’ Compensation Commission (Commission), which awarded William Scott temporary total disability benefits, permanent partial disability benefits for a back injury he sustained when he fell out of a trailer while working for KLLM, Inc. (KLLM), and assigned a twenty percent loss of wage-earning capacity. Scott appeals, asserting that the Commission erred in finding only a twenty percent loss of wage-earning capacity. However, KLLM cross-appeals, asserting that the Commission erred in finding that Scott suffered a twenty percent loss of wage-earning capacity and that Scott was not entitled to any permanent partial disability benefits.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Scott was a truck driver for KLLM when he injured his lower back after he fell out of the back of a trailer on March 19, 2002, while loading trailers at a Pillsbury plant in New Jersey. Scott reported his injury to his KLLM supervisor and was referred to the St. Dominic Hospital (St. Dominic) in Jackson, Mississippi. Despite his back injury, Scott did not go to the hospital and continued to work. Scott’s pain progressively worsened. Two months after he injured his back, Scott again told his supervisor at KLLM that he was having back problems. He was again referred to St. Dominic.
 

 ¶ 3. After his second referral, Scott went to St. Dominic. After diagnostics tests were run, Scott was told that he needed back surgery. Scott returned to KLLM and told his supervisor and the person to whom she referred him, Mr. Cox,
 
 [1]
 
 who handled workers’ compensation claims for KLLM, that he needed back surgery.
 

 ¶ 4. Scott testified that he continued to work around the truck yard for two days “to get used to taking hydrocodone,” which he was prescribed for his back pain. However, he could not continue working due to the pain, so he unloaded his belongings from the truck and turned in his keys. Scott testified that he told Cox, as well as several other employees, that he wanted to return to work as a driver for KLLM after he recovered from his back surgery. However, the record shows that Scott never returned to work at KLLM and that KLLM terminated his employment in August 2002 after Scott failed to call in or show for work for three consecutive days without explanation.
 

 ¶ 5. Scott then returned to his home in Nashville, Tennessee, where he saw Dr. James R. Head, his family doctor. Dr. Head referred him to a neurosurgeon, Dr. Garrett Powell, who prescribed conservative treatment. Dr. Powell referred him to Dr. Kenneth Sullivan for pain management and physical therapy. However, Scott testified that he could not afford the treatment prescribed by his specialists after August 2002, when his employment with KLLM was terminated, resulting in the loss of his health coverage.
 

 ¶ 6. In January 2003, Scott told Dr. Head that he was “running out of money” and needed to return to work, so Dr. Head released him to return to work. Scott testified that he did not attempt to return to work for KLLM at that time because he had been fired. Due to a lack of funds, Scott testified that did not see a doctor between January 2003 and May 2003. However, he returned to Dr. Head in May
 
 *715
 
 2003 because he had received some unemployment benefits during the interim.
 

 ¶ 7. The administrative law judge (ALJ) awarded Scott permanent total disability benefits at the rate of $322.90 per week for 450 weeks. Aggrieved by the decision of the ALJ, KLLM appealed to the Commission. The Commission reversed the holding of the ALJ and found that Scott was not entitled to permanent total disability benefits. The Commission ordered KLLM to pay temporary total disability benefits from May 5, 2002, through July 26, 2005, and permanent partial disability benefits for a period not to exceed 450 weeks, commencing on July 27, 2005. The Commission assigned a twenty percent loss of wage-earning capacity.
 

 ¶ 8. From this order, KLLM appealed to the Circuit Court of Hinds County, seeking reversal of the Commission’s decision. The circuit court entered a judgment on September 15, 2008, upholding the Commission’s decision. Scott now appeals, and KLLM cross-appeals.
 

 STANDARD OF REVIEW
 

 ¶ 9. The standard of review in appeals of workers’ compensation cases is limited; this Court must determine only whether the decision of the Commission is supported by substantial evidence and whether the law was correctly applied.
 
 Ga. Pac. Corp. v. Taplin,
 
 586 So.2d 823, 826 (Miss.1991). “The Commission sits as the ultimate finder of facts; its findings are subject to normal, deferential standards upon review.”
 
 Casino Magic v. Nelson,
 
 958 So.2d 224, 228 (¶ 13) (Miss.Ct.App.2007) (citing
 
 Natchez Equip. Co. v. Gibbs,
 
 623 So.2d 270, 273 (Miss.1993)). Because our review is limited, this Court “will only reverse the Commission’s rulings where findings of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious.”
 
 Westmoreland v. Landmark Furniture, Inc.,
 
 752 So.2d 444, 448 (¶ 8) (Miss.Ct.App.1999). We maintain this deferential standard even when we would have been persuaded to rule otherwise if we had been the fact-finder.
 
 Vance v. Twin River Homes, Inc.,
 
 641 So.2d 1176, 1180 (Miss.1994).
 

 DISCUSSION
 

 I. Scott’s Appeal
 

 ¶ 10. Scott argues that there was no substantial evidence before the Commission to justify a reduction of his award by eighty percent. Scott asserts that the overwhelming evidence substantiates that he proved to the Commission that he had suffered a loss of wage-earning capacity in excess of the maximum. He also asserts that the record is void of any evidence that his job search efforts were unreasonable or constituted a mere sham. Scott argues that according to
 
 Siemens Energy & Automation, Inc. v. Pickens,
 
 732 So.2d 276 (Miss.Ct.App.1999), KLLM is required to prove that his job search efforts were unreasonable, and he asserts that KLLM failed to do so. According to Scott, the Commission lowered his award for no apparent reason; thus, he asserts the Commission’s ruling is against the overwhelming and substantial weight of the evidence.
 

 ¶ 11. Scott sought permanent total benefits pursuant to Mississippi Code Annotated section 71-3-17(a) (Rev.2000). Such benefits are dependent on a claimant’s showing of a total loss of wage-earning capacity; a claimant, thus, must show a diminishment in his wage-earning capacity.
 
 Lott v. Hudspeth Ctr.,
 
 26 So.3d 1044, 1049 (¶ 18) (Miss.2010). From the earliest interpretations of Worker’s Compensation law, the supreme court has eschewed the comparison of actual earnings before the injury to post-injury earnings as a means
 
 *716
 
 to determine wage-earning capacity.
 
 Karr v. Armstrong Tire & Rubber Co.,
 
 216 Miss. 132, 137, 61 So.2d 789, 791 (1953). “Our statute does not test the earning capacity by the comparative wages received by [an] applicant before and after the injury. It is not a comparison of actual wage with actual wage.”
 
 Id.
 
 Instead the amount of the benefit is figured on a percentage of the claimant’s weekly wages at the time of the injury as compared to her wage-earning capacity in similar or other jobs thereafter.
 
 Id.
 
 In determining the “reasonableness” of a claimant’s efforts in seeking employment, the following are considered: “job availability, economics of the community, the claimant’s skills and background, and the nature of the disability.”
 
 Lott,
 
 26 So.3d at 1049 (¶ 15) (citing
 
 Taplin,
 
 586 So.2d at 828). Said another way, the factors which are considered in determining loss of wage-earning capacity include “the amount of education and training which the claimant has had, his inability to work, his failure to be hired elsewhere, the continuance of pain, and any other related circumstances.”
 
 McGowan v. Orleans Furniture Inc.,
 
 586 So.2d 163, 167 (Miss.1991) (citing
 
 Malone & Hyde of Tupelo v. Kent,
 
 250 Miss. 879, 882, 168 So.2d 526, 527 (1964)). “In other words, the determination should be made only after considering the evidence as a whole.”
 
 Id.
 

 ¶ 12. The fact that Scott was terminated from his employment does not entitle him to compensation payments. This Court has held:
 

 “The claimant has the burden of proof to establish [his] right to compensation under the law, and the Mississippi Supreme Court has held that, even in the case where the claimant cannot return to [his] former employment, an unexcused failure to show an effort to explore other employment opportunities more suited to the claimant’s post-injury condition is fatal to a claim for permanent disability.”
 

 Wagner v. Hancock Med. Ctr.,
 
 825 So.2d 703, 706 (¶ 12) (Miss.Ct.App.2002). Citing
 
 Pickens,
 
 Scott has attempted to place the burden on KLLM to prove that his job-search efforts were unreasonable.
 
 Pickens,
 
 732 So.2d at 283-84 (¶ 30). However, this duty of the employer does not arise until Scott has shown that “he has made a diligent effort, but without success, to obtain other gainful employment.”
 
 Wal-Mart Stores, Inc. v. Patrick,
 
 5 So.3d 1119, 1124 (¶ 11) (Miss.Ct.App.2008).
 

 ¶ 13. According to KLLM, Scott was hired on January 11, 2002, approximately two months before his alleged injury. Scott was then fired in August 2002 pursuant to KLLM’s no call, no show policy, which terminates the employment of an employee who fails to call in or show for work for more than three consecutive days without explanation. Scott alleges that KLLM made no efforts to accommodate his restrictions; however, Scott admitted he did not contact KLLM to keep them informed of his treatment, status, or any restrictions placed upon his employment. He also did not contact KLLM to inquire about employment opportunities that would accommodate his restrictions.
 

 ¶ 14. According to the record, Scott contacted potential employers regarding trucking positions, even though he has alleged that he is physically incapable of performing such a job because of his back injury. Because of this, Scott has not demonstrated that he suffered a permanent total disability as he has failed to demonstrate a complete loss of wage-earning capacity. Thus, this issue is without merit.
 

 II. KLLM’s Cross-Appeal
 

 ¶ 15. In its cross-appeal, KLLM argues that the circuit court erred in affirming the
 
 *717
 
 Commission’s decision. KLLM asserts that there was no substantial evidence to support the Commission’s finding of a permanent occupational disability based on a twenty percent loss of wage-earning capacity. KLLM asserts that Scott’s effort to obtain employment was not diligent and was not reasonable.
 

 ¶ 16. The Commission must determine the fact and extent of a claimant’s loss of wage-earning capacity by considering the evidence as a whole.
 
 DeLaughter v. S. Cent. Tractor Parts,
 
 642 So.2d 375, 379 (Miss.1994). After looking at the evidence as a whole, the Commission found that Scott was temporarily and totally disabled from May 5, 2002, the date he last worked for KLLM, until July 26, 2005, at which time Dr. Powell found him to have reached maximum medical improvement. The Commission then ordered that KLLM pay Scott temporary total disability benefits in the amount of $322.90 per week from May 5, 2002, through July 26, 2005, and permanent partial disability benefits for a period not to exceed 450 weeks, at the rate of $103.34.
 
 [2]
 
 The Commission found that Scott could have returned to work at KLLM in another suitable job; his job-search efforts were “less than enthusiastic”; and his job-search efforts were wasted in significant part since he pursued the same type of employment he had before his injury. Thus, we find that this final issue is without merit.
 

 ¶ 17. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED ON DIRECT APPEAL AND CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE DIVIDED EQUALLY BETWEEN THE APPELLANT/CROSS-APPELLEE AND AP-PELLEE/CROSS-APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES AND MAXWELL, JJ., CONCUR. IRVING AND ROBERTS, JJ., CONCUR IN RESULT ONLY. CARLTON, J., NOT PARTICIPATING.
 

 [1]
 

 . Mr. Cox’s first name is not revealed in the record.
 

 [2]
 

 . Based on a pre-injury average weekly wage of $775.